UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYWAYNE MARQUIS SCOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:18CV372 ACL |
| ST. CHARLES COUNTY, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant St. Charles County, Missouri's Motion for Summary Judgment. (Doc. 42.) This matter is fully briefed and ripe for disposition. For the following reasons, the Court will grant Defendant's Motion.

**I.    Procedural Background**

Plaintiff Lywayne Marquis Scott brought this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 20000cc, alleging various violations of his civil rights, including violation of the Free Exercise Clause of the First Amendment. (Doc. 1.) He named St. Charles County, Missouri, as well as four individual St. Charles County officials as Defendants. Scott was an inmate at the St. Charles County Adult Correctional Facility ("Jail") at the time of the incidents at issue and at the time he filed his Complaint.

The Court[1] dismissed the individual Defendants and many of his claims—including his First Amendment claim—as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). (Doc. 7.)

---

[1] Senior United States District Judge Stephen N. Limbaugh, Jr.

On October 23, 2019, the undersigned granted Defendant St. Charles County's Motion for Summary Judgment as to Scott's only remaining claim: the RLUIPA claim.  (Doc. 18.)  Scott appealed this judgment, in addition to the Court's dismissal of his other claims on frivolity review.  (Doc. 24.)

On October 23, 2020, the United States Court of Appeals for the Eighth Circuit issued an opinion and judgment affirming in part and reversing in part this Court's dismissal of Scott's claims.  (Doc. 33.)  The Court affirmed the grant of summary judgment as to Scott's RLUIPA claim, but reversed the dismissal of Scott's First Amendment claim for damages against St. Charles County.  The Eighth Circuit remanded the mater to this Court for further proceedings consistent with its opinion.

Following the Eighth Circuit's opinion, this Court issued a new Case Management Order so that discovery could occur on Scott's First Amendment claim.  (Docs. 35, 36.)  Defendant St. Charles County filed the instant Motion for Summary Judgment on August 2, 2021.  (Doc. 42.)  Scott opposes the Motion for Summary Judgment.  (Doc. 47.)

**II.     Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact is not the "mere existence of some

alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion. Local Rule 4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

(emphasis added). Even so, where a plaintiff fails to respond to a motion for summary judgment, the Court should not treat such a non-response as sufficient to dispose of the motion. *Lowry v. Powerscreen USB, Inc.,* 72 F. Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.,* 135 F.3d 1211, 1213 (8th Cir. 1997)). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.* "In so ruling, even on an unopposed motion for summary judgment, the court should review the facts in a light most favorable to the party who would be opposing the motion." *Id.*

### III.  Facts[2]

Scott was an inmate confined in the Jail from September 28, 2017, until December 3, 2018, at which time he was transferred to a different institution.

The St. Charles County Department of Corrections ("DOC") has adopted a Department-wide policy allowing for religious meals ("Policy"). The Policy states: "[i]nmates observing special religious dietary laws will be provided a diet, which meets the recommended daily

---

[2]Because Scott did not respond to Defendant's Statement of Uncontroverted Material Facts in accordance with Local Rule 7–4.01(E), they are deemed admitted.

4

allowance, as stated by the National Academy of Science, and which complies with the religious dietary laws." (Doc. 44-3.)  The DOC Policy and Procedures Manual ("Manual") Policy Number 1501, "Food Budgeting and Accounting," requires the Food Services Manager to keep a record of all religious diet meals served.  (Doc. 44-4 at 1.)  Policy Number 1503 of the Manual, titled "Prescribed Therapeutic Diets," requires that inmates receiving religious diets sign a document acknowledging they have in fact requested a religious diet.  (Doc. 44-5 at 3.)

On August 2, 2021—the date Defendant filed the instant Motion for Summary Judgment—two inmates housed at the St. Charles DOC were receiving a vegetarian diet and four inmates were receiving a religious/no pork diet.  (Doc. 44-6.)

**IV.   Discussion**

Defendant argues that it is entitled to summary judgment because Scott has failed to show a deprivation of his constitutional rights as required by *Monell v. New York Depart. Of Social Services,* 436 U.S. 658 (1978).  Defendant further argues that St. Charles County ("County") has adopted the Policy, which allows for religious meals.

In his Response in opposition to Defendant's Motion, Scott argues that the County violated his constitutional rights by failing to meet his religious dietary needs beginning on September 27, 2017, when he arrived at the Jail.  He contends that the County did not develop the Policy to which Defendant refers until June 2018.

Inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  Under the Free Exercise Clause of the First Amendment, a plaintiff must first raise a question of fact regarding whether the prison has placed a substantial burden on his ability to practice his religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); s*ee also*

5

*Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) (stating that "[a]s an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief"). "To constitute a substantial burden, the government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004).

Under the First Amendment, "prison inmates are entitled to reasonable accommodation of their religious dietary needs." *Love v. Reed,* 216 F.3d 682, 689 (8th Cir. 2000). It is well settled that jail and prison inmates "have the right to be provided with food sufficient to sustain them in good health [and] that satisfies the dietary laws of their religion." *McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir. 1987).

A municipality may be liable under Section 1983 only where a constitutional violation resulted from an official policy or unofficial custom. *See Monell*, 436 U.S. at 690 n. 55.

Defendant first argues that Scott has not alleged any facts to suggest a policy of the County that is facially unconstitutional, or that an official policy of the County had any causal connection with the alleged constitutional violation.

In his Complaint, Scott alleges that he is a Hindu inmate incarcerated at the County. He states that, as part of the Hindu religion, one cannot consume any meat. Scott states that he arrived at the County on September 28, 2017, at which time he informed the booking officers and registered nurse Jessica Richards that he was a practicing Hindu and could not consume any

6

meat.  He requested a "complete vegetarian diet."  (Doc. 1 at 7.)  Scott states that he was told that the Jail "does not make religious accommodations."  *Id.*  He states that his subsequent requests for a vegetarian diet and grievances related to such were denied by Defendant Sergeant Baker and delayed by Captain Myers for an excessive number of days.  Scott notes that vegetarian meals are "extremely inexpensive, and very easy to prepare and it would cost the correctional facility much less" to serve him vegetarian meals than the regular meals served to inmates.  *Id.* at 8.

Scott argues that Defendant denied his requests for vegetarian meals "pursuant to jail 'policy' which was approved by Sheriff Scott Lewis and his predecessor."  *Id.*  He states that Defendant has "a policy that forbids it from making accommodations for an inmate's religious belief."  *Id.*  As a result, Scott argues that he has been forced to "starve, because the lunch and dinner trays usually have meat on them, meaning I can only eat the fruit on the lunch tray or the bread."  *Id.*  He indicates that he has lost a significant amount of weight as a result.  Scott argues that he is bringing a "*Monell* claim" for damages against Defendant "for having a policy and/or 'custom' of denying requests for religious diet at the jail," that has been approved of and condoned by Scott Lewis.  *Id.* at 9-10.

The Eighth Circuit found that Scott "adequately alleged the existence of an unconstitutional policy denying religious accommodations."  (Doc. 33 at 2.)  As such, to the extent Defendant now argues otherwise, this claim necessarily fails.

Defendant next argues that it is entitled to summary judgment because the County DOC has adopted the Policy.  In support of its statement that the County DOC has adopted the Policy allowing for religious meals, Defendant cites to the Affidavit of Daniel Keen.  (Doc. 44 at 1.) Mr. Keen states that he has been employed as a Director of the County DOC since May 23,

2018.  (Doc. 44-2 at 1.)  Mr. Keen states that the County DOC has adopted the Policy allowing for inmates to receive religious meals, and attached a copy of the Policy to his Affidavit.  (Doc. 44-3.)  The Policy consists of an email communication sent by Ken Seghers to Mr. Keen and others on June 11, 2018.  The communication states as follows, in relevant part:

> We recently have had a few inmates claiming they want vegetarian diets for religious reasons, I asked Director his thoughts and he shared some ideas to come up with the below for now, he would like to see a policy similar to this and requested us to start operating under these guidelines immediately unless you see something we need to adjust in the wording below.

(Doc. 44-3 at 1.)  The Policy is then set out, which permits inmates "observing special religious dietary laws" to be provided a diet "which meets the recommended daily allowance, as stated by the National Academy of Science, and which complies with the religious dietary laws." *Id.*  The Policy requires that inmates request a religious diet and that staff at the DOC validate the request.  The Policy states that inmates "may at their request be placed on a Vegan or vegetarian diet prior to the validation occurring." *Id.*  Mr. Keen next cites the DOC Manual, Policies 1501 and 1503, which list effective dates of July 12, 2019 and October 12, 2019, respectively.  (Docs. 44-4, 44-5.)

Scott responds that the Policy was not implemented until June 2018, approximately nine months after his arrival at the Jail.  He states that, from his arrival at the Jail on September 27, 2017 until the June 11, 2018 email communication, there was no policy in place for the provision of a vegetarian Hindu diet.  As a result, Scott argues that his First Amendment rights were violated during this period.  Defendant does not address this argument in its Reply.

The undersigned finds that Defendant has failed to discharge its burden of establishing entitlement to judgment as a matter of law on Scott's First Amendment claim.  Scott has alleged that beginning on September 27, 2017, he repeatedly requested vegetarian meals to

8

accommodate his Hindu faith, and was denied such meals pursuant to a Jail policy of denying religious accommodations.  Defendant does not dispute the sincerity of Scott's religious beliefs or the fact that Hindus cannot consume meat.  Defendant instead argues that Scott has failed to support his claim and that the Jail has a Policy that allows for religious meals.  Notably absent from Defendant's briefing, however, is a statement that Scott was ever offered vegetarian meals pursuant to the Policy.  Further, Defendant's own evidence reveals that the Policy was not developed or implemented until after June 11, 2018.  Consequently, the existence of the Policy does not support Defendant's entitlement to judgment as to the period of September 27, 2017, through June 11, 2018.

Thus, Defendant's Motion for Summary Judgment will be denied as to Scott's First Amendment claim regarding the time period of September 27, 2017, through June 11, 2018. Because Scott does not dispute that the Jail implemented a Policy allowing for the provision of religious meals beginning on June 11, 2018, Defendant's Motion will be granted as to the period of June 11, 2018, through Scott's transfer on December 3, 2018.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment will be **granted in part and denied in part.**  Defendant's Motion will be **granted** as to Scott's First Amendment claim with regard to the period of June 11, 2018, through December 3, 2018**.**  The Motion is **denied** as to Scott's First Amendment claim with regard to the period of September 27, 2017, through June 11, 2018.

9

Dated:   December 15, 2021.              /s/ Abbie Crites-Leoni
                                         ABBIE CRITES-LEONI
                                         UNITED STATES MAGISTRATE JUDGE